**UNITED STATES of America,
Appellee,**

v.

**Pedro ESPINOZA, Defendant-Appellant.**

**No. 240, Docket 30742.**

United States Court of Appeals
Second Circuit.

Argued Dec. 16, 1968.

Decided Jan. 9, 1969.

Thomas D. Edwards, New York City,
for appellant.

Leonard M. Marks, Asst. U. S. Atty.,
Southern District of New York (Robert
M. Morgenthau, U. S. Atty., and Stephen
F. Williams, Asst. U. S. Atty., Southern
District of New York, on the brief), for
appellee.

Before KAUFMAN, ANDERSON and
FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

Pedro Espinoza appeals from judg-
ments of conviction on both counts of an
indictment, entered on jury verdicts of
guilty, on July 18, 1966. The first count
of the indictment charged that on March
1, 1966 appellant Espinoza and co-defend-
ants Jose Gonzalez-Perez, Francisco
Rivas and Helio Hernandez illegally im-
ported, received, concealed and facilitated
the transportation and concealment of
approximately 50 pounds of marihuana,
in violation of 21 U.S.C. § 176a[1]; and
the second count charged that the appel-
lant and the same co-defendants con-
spired between January 1, and March 18,
1966 to commit the foregoing substantive
offense. The case against the co-defend-
ant Hernandez was severed and he testi-
fied as a Government witness. On July
18, 1966 Espinoza was sentenced to a
term of five years on each count, the sen-
tences to run concurrently. He is pres-
ently on parole after serving approxi-
mately one and one-half years in prison.

---

1. 21 U.S.C. § 176a provides, in pertinent
part:
   "Notwithstanding any other provision
   of law, whoever, knowingly, with intent
   to defraud the United States, imports
   or brings into the United States mari-
   huana contrary to law, or smuggles or
   clandestinely introduces into the United
   States marihuana which should have
   been invoiced, or receives, conceals,
   buys, sells, or in any manner facilitates
   the transportation, concealment, or sale
   of such marihuana after being imported
   or brought in, knowing the same to have
   been imported or brought into the Unit-

ed States contrary to law, or whoever
conspires to do any of the foregoing
acts, shall be imprisoned not less than
five or more than twenty years and, in
addition, may be fined not more than
$20,000 * * *.
Whenever on trial for a violation of
this subsection, the defendant is shown
to have or to have had the marihuana
in his possession, such possession shall
be deemed sufficient evidence to au-
thorize conviction unless the defendant
explains his possession to the satisfac-
tion of the jury."

Appellant's central argument is that the court below committed error in denying him the opportunity to prove that the marihuana was not illegally imported. The Government does not contest the relevancy of an inquiry into the origin of the marihuana; rather, it insists that Espinoza never sought, and therefore was not denied, an opportunity to prove that the marihuana was not illegally imported. . The record, however, discloses that defense counsel was prevented from pursuing that issue and we reverse and remand.

There was evidence from which the jury could have found that undercover agent Scott of the Federal Narcotics Bureau made an arrangement with Gonzalez-Perez and Rivas to purchase 50 pounds of marihuana on March 1, 1966; that at an appointed time and place Hernandez and Espinoza drove up in a car which was parked directly behind one in which Scott, Gonzalez-Perez and Rivas were waiting; that, after Hernandez got out and spoke to Gonzalez-Perez, Espinoza also got out of the car and he and Hernandez walked away; that Gonzalez-Perez told Scott that the marihuana was there, and they then took it from the back seat of the car in which Hernandez and Espinoza had arrived. There was also evidence to prove that Espinoza was the connection between Gonzalez-Perez and Hernandez, who had the "pot,"

and that Hernandez had received it from someone who had bought it from Hernandez' nephew in California; that on the evening of March 1, 1966 Espinoza had told Hernandez that someone wanted to buy the marihuana on particular terms and that they then got it from the basement of the building in which Hernandez lived and drove with it to the place where Agent Scott and Gonzalez-Perez took it from the car.

Counsel for co-defendant Gonzalez-Perez was permitted on cross-examination of Hernandez to ask the nephew's name, but the trial court sustained a Government objection to a question seeking to establish the nephew's address. At that time counsel for appellant said, "Maybe we would want to call him as a witness." The Government argues that this remark "fails to make clear that this suggestion was based on a claim that the nephew's testimony would be relevant on the issue of Hernandez' credibility, not on the question of the possible domestic origin of the marijuana." This might have been so if the relevancy of the possibility of domestic origin had not later been twice brought to the court's attention. Thus, at the close of the Government's case, appellant's attorney specifically objected to the admission in evidence of the marihuana on the ground that the evidence showed that the source was in California.[2]

2. The following colloquy, which occurred on the day after the court's denial of the request for the address of Hernandez' nephew, indicates that the Assistant United States Attorney, Mr. Hawke, understood clearly the thrust of the domestic origin argument:

Mr. van Leer (attorney for co-defendant Gonzalez-Perez) :

The U. S. Attorney is going to ask you to charge the jury on certain aspects of the origin of this box, and you have prevented me from examining and you have prevented the cross-examiner now [attorney for co-defendant Rivas] from going into the origin of the box.

The District Attorney [sic] in his proposed requests to charge is going to go into that or ask you to go into that, where the origin is of this box.

The Court: You've got the origin of the box?

Mr. van Leer: No, we haven't.

The Court: Yes, you have. He told you he got it from his nephew.

Mr. van Leer: You limited us as to name only, not as to place.

The Court: I don't recall that.

Mr. van Leer: You limited the place. There was a big discussion on this yesterday.

Mr. Hawke: The government's proof of the illegal importation and knowledge by the defendants of the illegal importation is based upon the inference in Section 176a. The inference derives from the fact that the box was in the possession of the defendants.

We are not attempting to prove beyond that by actual proof that this box came in from Mexico or any other place.

There was sufficient to apprise the court of the question raised and of the relevancy of the inquiry into the origin of the marihuana, and its refusal to permit defense counsel to pursue the line of cross-examination designed to rebut the presumption of illegal importation and to explain possession was error.[3]

The judgment of the district court is reversed and the case is remanded for a new trial.

3. The Government relies strongly on the fact that, as it stated in its brief:

"Espinoza's own counsel in his extensive cross-examination of Hernandez, which was limited to an attack on Hernandez' credibility, did not ask a single question concerning Hernandez' nephew, his location, the origin of the marijuana, or any subject that bore even remotely on the issue of illegal importation."

But under the circumstances, this fact is not determinative because the court below had firmly rejected the earlier attempts by counsel for the co-defendants to pursue this line of questioning. The issue was clearly in the hands of the court, all three defendants would have benefited equally from a successful pursuit of the origin question and all three had a right to have it explored.